IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TARNCHE HULL,                )
                             )
            Plaintiff,       )
                             )   Case No. 13 C 1563
      v.                     )
                             )
CITY OF CHICAGO, et al.,     )
                             )
            Defendants.      )

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

On March 27, 2013, Plaintiff Tarnche Hull filed the present three-count First Amended Complaint against Defendants City of Chicago and Chicago Police Officers Robert Brown, Armando Garza, and Valery Roytman[1] alleging violations of his constitutional rights, as well as a state law claim of false imprisonment pursuant to the Court's supplemental jurisdiction. *See* 28 U.S.C. §§ 1331, 1367(a). Before the Court is Defendants' motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56(a). For the following reasons, the Court grants Defendants' motion for summary judgment and dismisses this lawsuit in its entirety.

**BACKGROUND**

**I.    Northern District of Illinois Local Rule 56.1**

Local Rule 56.1 "is designed, in part, to aid the district court, 'which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information,' in determining whether a trial is

---

[1] On December 12, 2013, Plaintiff voluntarily dismissed Officer Stacey Halley as a Defendant to this lawsuit.

necessary." *Delapaz v. Richardson,* 634 F.3d 895, 899 (7th Cir. 2011) (citation omitted). Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 632 (7th Cir. 2009). "The opposing party is required to file 'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (citing N.D. Ill. R. 56.1(b)(3)(B)). Local Rule 56.1(b)(3)(C) requires the nonmoving party to present a separate statement of additional facts that requires the denial of summary judgment. *See Ciomber v. Cooperative Plus, Inc.,* 527 F.3d 635, 643-44 (7th Cir. 2008).

In general, the purpose of Local Rule 56.1 statements and responses is to identify the relevant admissible evidence supporting the material facts, not to make factual or legal arguments. *See Cady v. Sheahan,* 467 F.3d 1057, 1060 (7th Cir. 2006) ("statement of material facts did [] not comply with Rule 56.1 as it failed to adequately cite the record and was filled with irrelevant information, legal arguments, and conjecture"). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Cracco*, 559 F.3d at 632; *see also Frey Corp. v. City of Peoria, Ill.,* 735 F.3d 505, 513 (7th Cir. 2013).

In sum, "[f]or litigants appearing in the Northern District of Illinois, the Rule 56.1 statement is a critical, and required, component of a litigant's response to a motion for summary judgment. The purpose of the local rule is to make the summary judgment process less burdensome on district courts, by requiring the parties to nail down the relevant facts and the way they propose to support them." *Sojka v. Bovis Lend Lease, Inc.,* 686 F.3d 394, 398 (7th Cir.

2012). With these standards in mind, the Court turns to the relevant facts of this case.

## II. Relevant Facts

On July 9, 2012, a Calumet City, Illinois police officer arrested Plaintiff Tarnche Hull's ("Hull") brother Latoine E. Hull. (R. 50, Pl.'s Rule 56.1 Add'l Facts ¶ 1.) The officer then signed a misdemeanor criminal complaint for obstruction of a police officer against Latoine E. Hull. (*Id*.) Booking information related to Latoine E. Hull, including a Social Security number and the date of birth, was entered into the Cook County Apprehension Book System ("CABS"). (*Id*. ¶ 2.) On September 11, 2012, Latoine E. Hull did not appear in court and a judge in the Circuit Court of Cook County issued a warrant for Latoine E. Hull's arrest. (*Id.* ¶ 3.)

On October 23, 2012, Defendant Officers Brown and Garza were assigned to beat number 652 in Chicago's Sixth District and were working the 5:00 p.m. to 2:00 a.m. shift. (R. 37, Defs.' Rule 56.1 Stmt. Facts. ¶ 6.) That evening, Officers Brown and Garza were on routine patrol near 7600 South May Street. (*Id*. ¶ 7.) At or around 7:15 p.m., Officers Brown and Garza saw a vehicle that they believed was parked too close to a fire hydrant at 7600 South May Street. (*Id*. ¶ 8.) Officers Brown and Garza approached the vehicle and saw two men seated in it. (*Id*. ¶ 9.) Specifically, Hull was seated in the front passenger seat and his twin brother, Antoine Hull ("Antoine"), was seated in the driver's seat. (*Id*.; Pl.'s Stmt. Facts ¶ 40.) Officer Brown drove up to the driver's side of the vehicle and asked Antoine if he had a license. (*Id*. ¶ 10.) Antoine responded yes, reached into his pocket, pulled out a state ID, and handed it to Officer Brown. (*Id.*) When Antoine handed Officer Brown a state ID instead of a driver's license, Officer Brown pointed out that it was not a driver's license and stepped out of the squad car. (*Id.* ¶ 11.) The officers then searched Antoine and Hull. (*Id.*)

During the search, the officers found, among other things, Hull's state-issued ID that stated his name as "Tarnche B. Hull." (*Id.* ¶ 12.) Thereafter, Officer Brown asked a dispatcher from the City of Chicago Office of Emergency Management and Communication ("OEMC") to conduct a name check on both state ID numbers. (*Id.* ¶ 13.) After conducting a name check, the dispatcher informed Officer Brown that there was an arrest warrant for the name Latoine E. Hull. (*Id.* ¶ 14.) The arrest warrant information that Defendant Officers obtained included Latoine E. Hull's date of birth and Social Security number and stated a warning that the officers should not search, detain, or arrest the target based on the report alone. (Pl.'s Stmt. Facts ¶ 14.) At that time, Officers Brown and Garza did not arrest Hull, but kept Hull's state ID in their possession. (Defs.' Stmt. Facts ¶ 15.) Defendant Officers, however, arrested Antoine, but released him an hour later at the Sixth District police station. (Pl.'s Stmt. Facts ¶ 7.)

When Officers Brown and Garza returned to the Sixth District police station, they conducted further investigation into "Tarnche B. Hull." (Defs.' Stmt. Facts ¶ 16.) As part of their investigation, Officer Brown looked up Hull's criminal history report and saw that Hull had previously used the alias "Latoine E. Hull." (*Id.* ¶ 17.) Due to Hull's prior use of the alias "Latoine E. Hull," Officer Brown believed that Hull was the target of the arrest warrant and that Tarnche Hull and Latoine Hull were the same person. (*Id.* ¶ 18.)

Later that evening, Hull realized that Defendant Officers had not returned his state ID and at approximately 10 p.m., he went to the Sixth District police station to get his ID. (*Id.* ¶ 19; Pl.'s Stmt. Facts ¶ 8.) At the station, Hull approached the front desk and asked for Officer Brown. (Defs.' Stmt. Facts ¶ 20.) When Officers Brown and Garza appeared at the front desk approximately thirty minutes later, Hull identified himself and asked Officer Brown for his ID,

4

after which the officers noticed that Hull matched the person in the photograph on the state ID that they had from the traffic stop. (*Id*. ¶ 21.) Hull then told the officers that there was no warrant for his arrest and Hull's girlfriend provided the officers with Hull's Social Security number. (Pl.'s Stmt. Facts ¶ 9.) Officer Brown nevertheless took Hull into custody at approximately 11:50 p.m. on October 23, 2012. (Defs.' Stmt. Facts ¶ 22.)

After taking Hull into custody, Officers Garza and Brown conducted further research by using the Law Enforcement Database System ("LEADS") to investigate the personal identifying information associated with the arrest warrant. (*Id*. ¶ 26.) A LEADS response revealed that the arrest warrant target used the aliases Tarnche Hull and Tarnche B. Hull. (*Id.* ¶ 28.) The officers' investigation further revealed that the arrest warrant target's FBI number — which is based on fingerprints — matched the FBI number on Hull's criminal history report. (*Id*. ¶ 33.) Also, the arrest warrant target used an alias Social Security number that was actually Hull's Social Security number. (*Id.* ¶ 37.)

Hull remained in the custody of the Chicago Police Department for approximately twenty-eight hours before officers turned him over to the custody of the Cook County Sheriff on October 25, 2012. (*Id*. ¶ 47; Pl.'s Stmt. Facts ¶ 37.) On October 29, 2012, a Cook County Assistant State's Attorney informed a Cook County judge that Hull was the "wrong person in custody." (Pl.'s Stmt. Facts ¶ 38.) On October 29, 2012, a Circuit Court judge determined that the arrest warrant — at issue in this lawsuit — was for Hull's brother, Latoine Hull, and released Hull from custody. (Defs.' Stmt. Facts ¶ 48.)

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**ANALYSIS**

**I.      False Arrest — Count I**

In Count I of his First Amended Complaint, Hull brings a false arrest claim pursuant to the Fourth Amendment against Defendant Officers Brown and Garza. In their summary judgment motion, Defendant Officers argue that if an arrest warrant is valid on its face, its execution does not violate the Fourth Amendment based on mistaken identity. *See Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971) ("[w]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest.") (citation omitted). More specifically,

"when police officers mistake a person for someone they seek to arrest, the arrest is constitutional if the officers (1) have probable cause to arrest the person sought, and (2) reasonably believe that the person arrested is the person sought." *See Catlin v. City of Wheaton,* 574 F.3d 361, 365 (7th Cir. 2009). Because Hull does not challenge the validity of the arrest warrant, the Court turns to whether the arresting officers reasonably believed that Hull was the person named in the warrant — Latoine E. Hull. *See id.*; *Tibbs v. City of Chicago,* 469 F.3d 661, 664 (7th Cir. 2006). Under this standard, "defendants are required to show only the *reasonableness* of their belief that the person they arrested was the person they were seeking; they are not required to show that they knew *with certainty* that the person they arrested was the person they were seeking." *Catlin,* 574 F.3d at 366 ) (emphasis in original). In short, if "an arrest warrant, regular on its face, is duly issued, the officer executing the warrant does not violate the Fourth Amendment by arresting the wrong person, unless the officer acts unreasonably." *Brown v. Patterson,* 823 F.2d 167, 169 (7th Cir. 1987).

Viewing the evidence and all reasonable inferences in Hull's favor, he has failed to raise a genuine issue of material fact for trial that Officers Brown and Garza acted unreasonably by arresting him. Specifically, at the time the officers arrested Hull, there was an active and valid arrest warrant for Hull's brother Latoine E. Hull. Also, Defendant Officers knew that Hull had a criminal record showing that he had previously used the alias Latoine E. Hull. After taking Hull into custody, Defendant Officers continued to investigate Hull by comparing the LEADS reports with Hull's criminal history report, state ID, and physical appearance. Similarities to Hull and Latoine E. Hull (the target of the arrest warrant), included that they: (1) had the same last name; (2) were African-American; (3) had the same age, height, weight, and hair color; and (4) had

7

similar tattoos. In addition, it is undisputed that the officers' research revealed that the arrest warrant target and Hull had the same FBI and Social Security numbers, and that the target had previously used the aliases Tarnche Hull and Tarnche B. Hull. Based on these similarities, Officers Brown's and Garza's arrest of Hull based on his brother Latoine Hull's arrest warrant was reasonable. *See Hill,* 401 U.S. at 803-04 ("sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment.").

Nevertheless, Hull argues that he is entitled to the inference that Officer Brown and Garza lied about the details surrounding his arrest. Although the Court construes all reasonable inferences in Hull's favor at this procedural posture, there is simply no evidence in the record supporting a reasonable inference that Officers Brown and Garza lied. *See Matthews v. Waukesha Cnty.,* 759 F.3d 821, 824 (7th Cir. 2014). In other words, any such inference is unreasonable and speculative. *See 520 South Michigan Ave. Assoc., Ltd. v. Unite Here Local 1,* 760 F.3d 708, 726 (7th Cir. 2014) ("Speculation is insufficient to withstand summary judgment.") (citation omitted).

Hull further takes issue with his and Latoine Hull's different personal identifiers, including that LEADS identifiers indicated that Latoine Hull has six tattoos, whereas Hull has only four tattoos. Also, the LEADS identifiers indicated that Latoine Hull had one scar on his left shoulder and Hull has two scars. These differences are a distinction without a difference, especially in light of the common identifiers, including the Social Security and FBI numbers, use of aliases, and physical appearance. *See Tibbs,* 469 F.3d at 664-65 (reasonable trier of fact would not find officer's conduct unreasonable based on minor discrepancies between arrestee and warrant target). In addition, the fact that Defendant Officers first arrested Hull's twin

8

brother Antoine during the initial traffic stop does not make their later arrest of Hull per se unreasonable as Hull suggests, especially because the officers released Antoine an hour after arresting him.

Accordingly, construing the facts and all reasonable inferences in Hull's favor, he has failed to set forth specific facts showing that there is a genuine issue for trial whether the Defendant Officers' conduct was unreasonable under the circumstances. Therefore, the Court grants Defendants' summary judgment motion as to Count I of the First Amended Complaint.

## II.     Unreasonable Detention — Count II

In Count II of his First Amended Complaint, Hull alleges that Defendant Officers Garza, Brown, and Roytman[2] violated his constitutional rights because they continued to hold him in custody for twenty-eight hours despite the post-arrest investigation that allegedly dissipated the earlier probable cause. *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("The continuation of even a lawful arrest violates the Fourth Amendment when the police discover additional facts dissipating their earlier probable cause."). In particular, Hull argues that his continued detention is protected by the Fourth Amendment because no judicial determination of probable cause had been made at that time. *See Garcia v. City of Chicago,* 24 F.3d 966, 971 (7th Cir. 1994) (citing *Gerstein v. Pugh,* 420 U.S. 103, 119–24, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)); *see also Hernandez v. Sheahan,* 455 F.3d 772, 777 (7th Cir. 2006) ("the fourth amendment drops out of the picture following a person's initial appearance in court"). Defendant Officers, on the other hand, argue that Hull's continued detention claim is reviewed under the due process clause

---

[2] Defendant Lieutenant Roytman was the Watch Commander in charge of the Chicago Police Department's Sixth District during the relevant time period and issued the final approval of probable cause to arrest Hull. (Pl.'s Stmt. Facts ¶¶ 30, 33.)

of the Fourteenth Amendment. *See Baker v. McCollan,* 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *also Atkins v. Chicago,* 631 F.3d 823, 827 (7th Cir. 2011).

Whether Hull's claim falls under the Fourth Amendment or the due process clause of the Fourteenth Amendment is of no moment because the facts — taken in a light most favorable to Hull — show that the Defendant Officers' further investigation did not dissipate the earlier probable cause determination. Instead, as discussed in detail above, Defendant Officers' post-arrest investigation supported their probable cause determination to arrest Hull. Moreover, because Defendant Officers lawfully arrested Hull on a valid warrant, the Supreme Court's decision in "*Baker* forecloses any due process claim based on unreasonable postarrest detention." *See Tibbs,* 469 F.3d at 665. To clarify, in *Baker,* the Supreme Court reasoned:

> Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent. Nor is the official charged with maintaining custody of the accused named in the warrant required by the Constitution to perform an error-free investigation of such a claim.

*Id.* at 145-46. The Court therefore grants Defendants' summary judgment motion as to Count II of the First Amended Complaint.[3]

### III. State Law False Imprisonment — Count III

In Count III of his First Amended Complaint, Hull asserts that Defendant Officers Garza, Brown, and Roytman committed the tort of false imprisonment when they refused to let him

---

[3] Because Hull has failed to present evidence creating a genuine issue of material fact for trial regarding his constitutional claims, the Court need not address Defendant Officers' qualified immunity arguments. *See McDowell v. Village of Lansing,* 763 F.3d 762, 766 (7th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)).

10

leave the Chicago police station on the evening of October 23, 2012. Defendant Officers argue that because there was probable cause to arrest Hull, his state law false imprisonment claim must fail. *See Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 626 (7th Cir. 2010) ("Lack of probable cause is a common element of the Illinois claims of false arrest, false imprisonment, and malicious prosecution."). The Court agrees.

Further, even if Hull could establish that Defendant Officers lacked probable cause to arrest him, he has not set forth evidence, viewed in his favor, that Defendant Officers' conduct was willful or wanton pursuant to the Illinois Local Government and Governmental Employees Tort Immunity Act. *See* 745 ILCS 10/1-101, *et seq.* Specifically, in "order to protect public funds from being dissipated by damage awards in tort cases, the Local Government and Governmental Employees Tort Immunity Act was enacted to shield local public entities and public employees from liability for ordinary negligence committed during the exercise of their duties." *Mitchell v. Special Educ. Joint Agreement Sch. Dist. No. 208,* 386 Ill.App.3d 106, 111, 325 Ill.Dec. 104, 897 N.E.2d 352 (1st Dist. 2008) (internal citation omitted). Section 2-202 of the Tort Immunity Act states that a "public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." *See* 745 ILCS 10/2-202. The Tort Immunity Act defines willful and wanton conduct as:

> [A] course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property. This definition shall apply in any case where a "willful and wanton" exception is incorporated into any immunity under this Act.

745 ILCS 10/1–210; *see also Tagliere v. Western Springs Park Dist.,* 408 Ill.App.3d 235, 241-

42, 348 Ill.Dec. 643, 944 N.E.2d 884 (1st Dist. 2011).

Here, Defendant Officers did not act with "utter indifference" or" conscious disregard" when arresting Hull and placing him in custody. Instead, they based their decision to arrest Hull on the active and valid arrest warrant for Latoine E. Hull and the fact that Hull had previously used the alias Latoine E. Hull on at least two separate occasions. After taking Hull into custody, Defendant Officers continued to investigate Hull by comparing the LEADS reports with Hull's criminal history report, state ID, and physical appearance, reasonably concluding that the similarities between Hull and Latoine E. Hull warranted Hull's arrest. Under these circumstances, the Court would be hard-pressed to conclude that Defendant Officers Brown and Garza's conduct was wilful or wanton. Therefore, Defendant Officers and the City are immune from this state law claim. *See McDowell v. Village of Lansing,* 763 F.3d 762, 768 (7th Cir. 2014).

As such, the Court grants Defendant Officers' summary judgment motion as to Count III of the First Amended Complaint.

## CONCLUSION

For these reasons, the Court grants Defendants' motion for summary judgment and dismisses this lawsuit in its entirety.

**Dated:** October 7, 2014

                            **ENTERED**

                            *[signature]*

                            **AMY J. ST. EVE**
                            **United States District Court Judge**